## Estate of Albert J. Hain, A Lunatic. J. Henry Bennetch's Appeal.

*Lunacy—Committee—Surcharge.*

Where it appears that the committee of a lunatic may not have been as economical of his expenditures in the care of a lunatic as he might have been, but it is clear that he was upright in the discharge of his trust, and that whatever unnecessary expenditures he made were in the interest of the personal comfort of the lunatic, he will not be surcharged for such expenditures, although he did not previously apply to the court for leave to make them, if the court subsequently ratifies his acts.

Argued March 7, 1895. Appeal, No. 280, Jan. T., 1895, by J. Henry Bennetch, from order of C. P. Berks Co., April T., 1887, No. 148, dismissing exceptions to report of auditor on account of Adam L. Hain, committee of Albert J. Hain, a lunatic. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report.

ERMENTROUT, P. J., filed the following opinion:

"It would appear from the evidence that Adam Hain was

appointed committee of Albert J. Hain, on the tenth of May, 1887, and continued in the execution of his trust until June 24, 1893, when J. Henry Bennetch was appointed as his successor. Various moneys were expended by him for the benefit of his cestui que trust, including the entire income of the estate, and also portions of the principal. The expenditure of the principal was without previous application to the court. Having filed his account setting forth these various expenditures, the account was confirmed absolutely without objection, and applications were then made, both for the appointment of an auditor and for the opening of the account.

"In answer to the rule to show cause why the account should not be opened, the accountant set forth substantially, the errors which had been made in the statement of the account, making a very full statement as to the expenses connected with it and as to the management of his estate, setting forth, inter alia, 'That all the credits claimed in the account were for moneys actually paid and expended by the respondent for the benefit of the estate, and that all the money that was expended was honestly applied to the support and maintenance of the said Albert J. Hain, and the maintenance of the real estate which he owned,' and asked the court to ratify and approve all the payments which were thus made honestly and in good faith, and also asked that the errors in the account herein stated be corrected, and setting forth that the balance due the estate he was ready and willing to pay to his successor in the trust.

"The auditor has recommended that the court allow the expenditures, and these exceptions raise the question as to the propriety of the amount allowed, and the authority for their approval by the court. It is, of course, unnecessary to discuss the question of the expenditure of the income, for, beyond all question, that expenditure was admittedly necessary and reasonable and justified without any special order of the court in the premises.

"In Frankenfield's Appeal, 102 Pa. 589, the court say: 'Where a committee of a lunatic expends money of the corpus of the lunatic's estate in the repair of real estate without obtaining an order of court authorizing him to do so, he runs the risk of having his action disapproved and of being surcharged. But where the court subsequently approves such

expenditure as reasonable and necessary, the ratification is equivalent to a previous order.'

" In the case of Steiger's Appeal, No. 9, December Term, 1878, this court had occasion to examine the question, and, following this authority of the Supreme Court, approved the expenditures as reasonable and necessary, and ratified the action of the committee in making the expenditures without the order of the court.

" In the face of this decision, the authority of the auditor to recommend and of the court to approve the recommendation cannot seriously be questioned. Every dollar was honestly expended for the benefit of the lunatic and his family, and for no one else. The auditor expressly finds that in making these expenditures, 'The accountant acted in good faith, and not one of the relatives are here disputing the fact or protesting that the lunatic and his family did not get the benefit of every penny expended by the accountant.'

" Whilst it is true that it is part of the duties of the committee to administer the estate for the benefit of his cestui que trust, and that his successor has the legal right and the legal duty to scrutinize his predecessor's account and ask that improper credits be stricken out, yet there is still some discretion allowed a committee in the management of the person and the estate of the lunatic. The only witness called was the committee, Adam L. Hain, himself. He made no concealment; he explained everything connected with the estate; the financial affairs of the lunatic were in a very tangled condition; he took the estate incumbered by debts; farming operations, as every one in this section knows, were unprofitable; the relatives of the lunatic desired him to remain on the farm; he was a married man with a wife and child living with him; he had various interests which required attention, and the committee was kept very busy. The lunacy was of that mild description which simply unfitted him for the management of his business affairs. He was easily persuaded and overreached in any business transactions for which he was wholly unfitted. Good natured and shiftless; nothing else.

" In passing upon the question of the expenditures and the question of their excessive or inexcessive character, the auditor finds that, ' Under the peculiar circumstances of the case

as disclosed by the evidence, it is not unreasonable. From the evidence submitted, the auditor believes that the accountant acted in good faith ; that there was no such gross, supine negligence on the part of the accountant as would warrant the auditor in surcharging him with the amount expended above the income or any portion thereof. The auditor would therefore recommend to the court that the principal expended by the committee be allowed to the accountant nunc pro tunc.'

" After a careful examination of the uncontradicted testimony of the committee, Adam Hain, the only person called to testify in the matter, neither wife, relative, nor kin, protesting or finding fault, the committee, acting honestly and in good faith, the cestui que trust, wife and child having received the entire benefit of the expenditures, we think the auditor's recommendation just and proper, and we therefore ratify and approve all the expenditures made.

" Exception 2. This alleges the auditor erred in not surcharging the accountant with interest.

" From the finding of the auditor there was in the hands of the committee at the end of the first year of the trust $136.08. Certainly this amount could not well be put out at interest, being entirely too small for investment. There ought to be no surcharge, especially as the expenses of the year following exceeded the income. Therefore, at the end of 1888 there was nothing to invest. December 1, 1889, the auditor finds that he had in hand $590.69, and that this amount had increased until December 31, 1891, when it amounted to $1,135. In 1892 there was a deficit of $187.73, and in 1893 the income exceeded the expenses by $376.75. Upon this showing the auditor properly disallowed the accountant to take credit of $90.00 for interest on money advanced by him. Further on in his report he says, in disallowance of the claim of $270 compensation, ' he has not charged himself with interest on the several sums of money received by him. We have already shown that the accountant had in hand some $590.69 on the 31st of December, 1889, of which sum at least $500 might have been invested. That $500 more might have been invested in 1891. Had he done so he might have realized for the estate the sum of at least $180.

" The auditor has, therefore, ascertained that $180 interest could have been realized if the trustee had put it out at inter-

est, but it has not been shown that these moneys were used for the personal benefit of the trustee, or that he derived any profit from these moneys in any way. The neglect to invest whereby he might have realized for the benefit of the estate the sum of $180 interest, is assigned by the auditor as the most potent reason for the disallowance for the trustee's compensation of $270, notwithstanding he finds that the trustee's labors were worth this amount of $270, and that the auditor would cheerfully recommend the payment of this amount as compensation or earnings for the work done.

"It seems to us that it would be a wrong to charge him with this amount of interest and also at the same time refuse him compensation. This would be a punishment which the law certainly does not impose upon an accountant acting in good faith. If the money of the estate could have been made to earn $180, not received through this neglect to invest, it suffered no loss when the accountant is deprived of more than this amount of compensation which he fairly earned.

"Exception 8. Error is alleged in charging the estate and not the accountant with the costs of the audit, for the reason that the examination of the account was occasioned by the conduct of the accountant, and the evidence shows mismanagement and extravagant expenditure and impairment of the corpus of the estate. We have already approved the finding of the auditor as to the alleged mismanagement and expenditures upon the ground that he acted in good faith. They were for the benefit of the cestui que trust, wife and child, and were not so unreasonable as to compel us to refuse their allowance.

"This leads us to the consideration of the question whether the examination of this account was occasioned by the conduct of the accountant. When the trustee's account was filed it set forth a small balance of $24.14 due the estate. There was upon it an absolute confirmation. It is admitted that there were errors in this account, and, therefore, he is in the position of having filed, however innocently and mistakenly, an erroneous account. It is creditable to him that he frankly acknowledged the error, explained how it was made, and set forth the necessary corrections to be made. This was done, however, in answer to a petition filed, and the appointment of an auditor was necessary, not simply for the work of necessary distribu-

tion alone.   In every estate the necessary expenses of the distribution required to be made by law, are chargeable against the estate.   Besides, it was necessary for the trustee, having omitted to ask the permission of the court to expend portions of the principal sum of the trust estate, to justify the expenditure of the principal made by him.   His previous neglect to apply to the court cast upon him the burden of justifying the expenditures.   This portion of the duties of the auditor was rendered necessary by his conduct, and although he has in the judgment of the auditor, as well as in our judgment, proven such facts as to lead us to ratify and approve these expenditures, the fact still remains that the work of the auditor to this extent was rendered necessary by his act.

" The authorities upon this question are uniform, justifying and requiring imposition of the costs upon trustees.   Patterson's App., 104 Pa. 369, presents a somewhat similar case to the one now under discussion.   It was held that 'where a trustee, who is authorized by an order of court to expend a certain sum in the construction of a building, exceeds the expenditure so authorized, he takes the risk of being surcharged; but where the court subsequently approve such expenditure, he is relieved from liability.'   But the auditing judge reformed and restated the entire account and imposed the costs of the proceeding upon the accountant.   The decree made by the court below was approved by the higher court.

" The Appeal of Franklin Taylor, 21 W. N. C. 357, presented the case where the account filed contained claims for large amounts to which the cestui que trust would not agree, and hence litigation became necessary to determine the true state of the account.   When that was finally ascertained, it was found that the claim of the trustee was very largely reduced.   The amount ultimately found to be due to the trustee being much less than the trustee claimed by his account, he was regarded as the losing party, and the costs were imposed upon him.

" Clauser's Est., 84 Pa. 51, presents the case of a trustee forfeiting his right to commissions, and being held to pay three fourths of the costs of auditing the account.   It involved a question of the misappropriation of the funds of the estate.   The Supreme Court held that 'authority can scarcely be re-

quired to prove that the costs before the auditor, except so much as would cover the usual and formal expenses of a distribution, should be borne by the accountant.'

" The accountant being responsible for the necessity of a portion of this audit, $50.00, in our judgment, is a proper amount chargeable against him under the circumstances, and to this extent the exception is allowed.

" The exceptions of the accountant are dismissed."

*Errors assigned* were dismissing exceptions to auditor's report.

*Richmond L. Jones, Adam H. Schmehl* with him, for appellant, cited: Hehn v. Hehn, 23 Pa. 416 ; Guthrie's App., 16 Pa. 323 ; Koenig's Est., 1 Woodward, 265.

*C. H. Ruhl,* of *Ermentrout & Ruhl,* for appellee, cited : Frankenfield's App., 102 Pa. 589 ; Clauser's Est., 84 Pa. 51 ; Lusk's Est., 150 Pa. 517.

PER CURIAM, March 18, 1895 :

It is not denied that the court below could have authorized the expenditures complained of if the accountant had made application at the proper time. What it had the power to authorize, if done without permission it may ratify and approve. Whether this power should be exercised in any given case is not a question to be settled by the application of some general rule of law, but by the exercise of a sound judicial discretion in view of all the surrounding circumstances. Fortunately the courts have the power to do in such cases what ought in fairness and good conscience to be done. The court below seems to have exercised this power in the case now before us in a discreet and equitable manner, and we are not willing to disturb the conclusion reached. The accountant may not have been as economical of his expenditures in the care of the lunatic as he might have been, but it is clear that he was upright in the discharge of his trust, and that whatever unnecessary expenditures he made were in the interest of the personal comfort of his unfortunate ward.

The order appealed from is affirmed, the costs of this appeal to be paid by the appellant.